**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Araceli Haney, | No. CV-13-02630-PHX-ESW |
| Plaintiff, | |
| v. | **ORDER** |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Araceli Haney's appeal of the Social Security Administration's ("Social Security") denial of her claim for disability benefits. On April 2, 2008, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Both applications allege disability beginning October 17, 2007. This Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g), 1383(c). Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing. Both parties have

consented to the exercise of U.S. Magistrate Judge jurisdiction.[1]  (Doc. 16).  After reviewing the Administrative Record ("A.R."), Plaintiff's Opening Brief (Doc. 24)[2] and Defendant's Response Brief (Doc. 26),[3] the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and is free of harmful legal error.  The decision is therefore affirmed.

## I. LEGAL STANDARDS

### A.  Disability Analysis:  Five-Step Evaluation

The Social Security Act (the "Act") provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  The Act also provides for Supplemental Security Income to certain individuals who are aged 65 or older, blind, or disabled and have limited income.  42 U.S.C. § 1382.  To be eligible for benefits based on an alleged disability, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity.  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(A)(3)(A).  The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months.  *Id.*

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps.  20 C.F.R. §§ 404.1520(a), 416.920(a).  The claimant has the burden of proof regarding the first four steps:[4]

---

[1] This case was reassigned to Hon. Eileen S. Willett on November 14, 2014. (Doc. 26).

[2] Cited herein as "Pl. Br. at __"

[3] Plaintiff did not file a reply.

[4] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

**Step One**: Is the claimant engaged in "substantial gainful activity"? If so, the analysis ends and disability benefits are denied. Otherwise, the ALJ proceeds to step two.

**Step Two:** Does the claimant have a medically severe impairment or combination of impairments? A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step. Otherwise, the ALJ proceeds to step three.

**Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. §§ 404.1520(f), 416.920(f). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[5]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g). Social Security is

---

[5] *Parra*, 481 F.3d at 746.

- 3 -

>responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id.*

### B. Standard of Review Applicable to ALJ's Determination

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). This is because the ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court must also consider the harmless error doctrine when reviewing an ALJ's decision. This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there

remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion.") (citations omitted).

## II. PLAINTIFF'S APPEAL

### A. Procedural Background

Plaintiff alleges that on October 17, 2007, at the age of 37, she became unable to work due to the following ten impairments: (i) nonalcoholic steato-hepatitis; (ii) epistaxis; (iii) GERD; (iv) diverticulosis with polyps; (v) vertigo; (vi) back pain (bulging discs at L4 and L5); (vii) arthritis; (viii) depression; (ix) hypoglycemia; and (x) asthma. (A.R. 63, 161). Plaintiff has a high school education and has completed additional vocational training. (A.R. 1053). Plaintiff has experience working as a senior customer service representative, corrections officer, detention officer, and security officer. (A.R. 163).

Plaintiff filed her initial Disability Insurance Benefits and Supplemental Security Income applications on April 2, 2008. (A.R. 124, 129). Social Security initially denied both applications on August 8, 2008. (A.R. 62). On October 6, 2008, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of Plaintiff's applications. (A.R. 70, 73). Thereafter, Plaintiff requested a hearing before an ALJ. (A.R. 77).

The ALJ held a hearing on April 30, 2009. (A.R. 27-51). In her November 6, 2009 decision, the ALJ found that Plaintiff is not disabled. (A.R. 11-25). After the Appeals Council denied Plaintiff's request for review, Plaintiff appealed the decision to the U.S. District Court for the District of Arizona. In its October 3, 2011 decision, the Court found that the ALJ failed to consider the combined effect of all of Plaintiff's severe and non-severe impairments, thereby making it impossible for the Court to be sure the ALJ's decision was supported by substantial evidence. (A.R. 1124). The Court remanded the matter to the Commissioner for a new hearing and decision. (A.R. 1125).

The ALJ held the new hearing on December 11, 2012. (A.R. 1048-89). In her February 22, 2013 decision, the ALJ again found that Plaintiff was not disabled. (A.R.

1041). On December 24, 2013, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. §§ 405(g), 1383(c) requesting judicial review and reversal of the ALJ's decision. In the alternative, Plaintiff requests that the matter be remanded for a new hearing.

### B. The ALJ's Application of the Five-Step Disability Analysis

The ALJ completed all five steps of the disability analysis before finding that Plaintiff is not disabled and entitled to disability benefits.

#### 1. Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since October 17, 2007, the alleged disability onset date. (A.R. 1033). Neither party disputes this determination.

#### 2. Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following severe impairments: nonalcoholic steato-hepatitis, fibromyalgia, obesity, bilateral hand paresthesias, lumbar degenerative disc disease and a major depressive episode, single episode. (*Id*.). This determination is undisputed.

#### 3. Step Three: Presence of Listed Impairment(s)

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations. (A.R. 1035). Neither party challenges the ALJ's determination at this step.

#### 4. Step Four: Capacity to Perform Past Relevant Work

In determining Plaintiff's residual functional capacity ("RFC"), the ALJ gave significant weight to the opinions of non-examining state agency physicians, including Dr. S. Hadi, as the ALJ found that the opinions were supported by other evidence in the record. (A.R. 1039). The ALJ also gave significant weight to the opinion of consultative examiner, Dr. Greg Peetoom. (*Id*.). The ALJ interpreted Dr. Peetom's report as finding that Plaintiff can perform simple, routine work. (*Id*.). In addition, the ALJ considered

Plaintiff's subjective complaints, but did not find the complaints to be entirely credible. (A.R. 1037).

After considering the evidence, the ALJ assessed that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), and as described in the Physical RFC Assessment dated October 1, 2008, subject to several limitations. (A.R. 707-14, 1036). The ALJ determined that Plaintiff is "limited to performing simple, routine work and should avoid moderate exposure to noxious substances, fumes, dusts, and gases, or to hazardous conditions, including unprotected heights or dangerous moving machinery." (A.R. 1036).

The ALJ determined that Plaintiff has past relevant work as a jail keeper, office clerk, security guard, claims adjuster, and insurance customer service representative. Because the ALJ found that the demands of this past relevant work exceed Plaintiff's assessed RFC, the ALJ found that Plaintiff is unable to perform her past relevant work. (A.R. 1040).

In her Opening Brief (Doc. 24), Plaintiff challenges the ALJ's RFC determination at step four, arguing that the ALJ ignored and improperly rejected the opinion of Dr. Peetoom with respect to Plaintiff's ability to adapt to changes in routine. (Pl. Br. at 6). Plaintiff also alleges that the ALJ ignored and improperly rejected Dr. Hadi's opinion with respect to Plaintiff's abilities to adapt to changes in a work routine and set realistic goals or make plans independently of others. (*Id*.).

### 5.  Step Five: Capacity to Perform Other Work

To assist the ALJ in determining Plaintiff's ability to perform other work, a vocational expert ("VE") was present at both the 2009 and 2012 hearings. At the 2009 hearing, the VE testified that Plaintiff would be able to perform unskilled occupations such as an assembly worker and quality control inspector. (A.R. 48). Upon the ALJ's inquiry, the VE stated that this testimony is consistent with the information contained in

the Dictionary of Occupational Titles ("DOT").[6] The ALJ did not seek additional testimony about Plaintiff's ability to perform other work at the 2012 hearing.[7] Based on the VE's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff is capable of making a successful adjustment to work as an assembly worker or quality control inspector. (A.R. 1040-41).

Plaintiff argues that the positions of assembly worker and quality control inspector are skilled and thus cannot be performed by Plaintiff since Plaintiff is limited to unskilled work. (Pl. Br. at 10). Plaintiff also argues that the ALJ's acceptance of the VE's testimony represents an unexplained deviation from the DOT. (*Id.*).

### C. Plaintiff's Challenge to the ALJ's Analysis at Step Four

#### 1. The ALJ Did Not Improperly Ignore or Reject the Opinions of Drs. Peetoom and Hadi

It is well-settled that the ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews*, 53 F.3d at 1039. This includes interpreting terms and phrases used by physicians in their opinions. For example, in *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995), a claimant's treating physician opined that the claimant could perform a "sedentary type job." The ALJ concluded that the physician did not use the term to mean "sedentary work" as defined by Social Security regulations. *Id.* The ALJ assessed that the claimant could perform file clerk work, which Social Security regulations define as "light work." *Id.* at 751. On appeal, the claimant attached a letter from the physician, which stated that the physician intended to use the term "sedentary" within the regulations' technical

---

[6] Available at http://www.occupationalinfo.org/.

[7] The ALJ's assessment of Plaintiff's RFC in her 2012 decision is the same as in her 2009 decision. The ALJ's November 6, 2009 decision states the Plaintiff has the RFC "to perform at least sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b), and as described in [the Physical RFC Assessment dated October 1, 2008], except that she is limited to performing simple routine work and should avoid moderate exposure to noxious substances, fumes, dusts, and gases, or to hazardous conditions, including unprotected heights or dangerous moving machinery." (A.R. 19).

- 8 -

meaning. *Id*. The Ninth Circuit Court of Appeals agreed with the ALJ's interpretation of the physician's opinion as there "was no evidence at all before the ALJ" to indicate that the physician meant that the claimant could only perform "sedentary work" as defined by Social Security regulations. *Id*. at 750. The Court also refused to remand the case for consideration of the physician's newly-submitted letter as the claimant did not establish good cause for failing to submit the evidence during the administrative proceedings. *Id*. at 751. Finding that substantial evidence supported the ALJ's conclusions, the Court affirmed the ALJ's decision. *Id*.

The ALJ's duty to resolve conflicts and ambiguity in the evidence does not mean that the ALJ must discuss *all* evidence presented to him or her. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (the Commissioner need not discuss all evidence presented). Rather, an ALJ must explain why "significant probative evidence has been *rejected*." *Id*. at 1395 (emphasis added); *see also Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ is not required to discuss evidence that is neither significant nor probative). An ALJ's interpretation of a physician's opinion does not constitute a rejection of that opinion. *See Orteza*, 50 F.3d at 750 (finding that an ALJ's interpretation of a physician's use of the term "sedentary type job" did not constitute a rejection of the physician's opinion).

Here, Plaintiff argues that the ALJ ignored and rejected without explanation the opinions of Drs. Peetoom and Hadi. Plaintiff's argument, however, rests on the erroneous assumption that the ALJ did in fact reject their opinions. As discussed below, the Court finds that the ALJ did *not* reject Drs. Peetoom and Hadi's opinions. Instead, the ALJ interpreted them. Because the ALJ's interpretation is reasonable and supported by substantial evidence, the Court will not disturb the ALJ's decision.

### i. Dr. Peetoom's Opinion

Dr. Peetoom stated in his Psychological/Psychiatric Medical Source Statement that Plaintiff "might do okay in situations not emphasizing sustained concentration" and "likely will need more than average amount of time to adapt to changes in routine."

(A.R. 564). At the December 11, 2012 hearing, Plaintiff's attorney incorporated these statements in the following hypothetical presented to the VE:

> Assume an individual of the age and education of the claimant, take the limitation of the last hearing, at least physically, the sedentary exertion . . . . From an [sic] mental and emotional point of view . . . would not be suited to situations emphasizing sustained concentration, and not be in situations in which social interaction is consistently emphasized, and would need more than average time to adapt to changes in routine.

(A.R. 1078). The VE explained that she needed a quantification of "more than average" and "sustained concentration." (A.R. 1078-79). Plaintiff's attorney referred to Dr. Peetoom's report and stated "That's how it's described narratively." Plaintiff's attorney supplied his own quantification, telling the VE:

> The best I could do for you would be to describe them as moderate limitations quantified in an eight-hour day . . . [with] occasional and frequent and constant being in the middle, that's equating moderate to occasionally . . . I'll just say 20 percent, close to the third, but 20 percent of the workday with respect to the pace . . . .

(A.R. 1079). With respect to Dr. Peetoom's phrase "more than average time," Plaintiff's attorney also supplied his own definition, stating that a person "would need 20 percent extra time or would be 20 percent slower." (A.R. 1079).

Considering the definitions provided by Plaintiff's attorney, the VE testified that the hypothetical limitations would limit Plaintiff's ability to perform any work. Plaintiff's attorney then asked the VE "How below average or how high can the below average be before it doesn't affect it, 15 percent, 10 percent?" The VE testified "between 10 and 15 percent."

Plaintiff has the burden of proof at step four of the disability analysis. That is, Plaintiff is ultimately responsible for providing the evidence to be used in making the RFC finding. *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995) (a claimant bears the burden of proving entitlement to disability benefits). Plaintiff could have requested that Dr. Peetoom answer interrogatories or be subpoenaed at a hearing to clarify his

meaning of the phrases "sustained concentration" and "more than average," but Plaintiff did not.[8] Thus, like in *Orteza*, there was no evidence at all before the ALJ as to Dr. Peetoom's intended definitions of "sustained concentration" and "more than average."

The ALJ interpreted Dr. Peetom's report as finding that Plaintiff is "capable of performing simple, routine work despite her mental impairments." (A.R. 1039). The Court finds that this interpretation is reasonable. Significantly, Dr. Peetoom's report does not state that Plaintiff is precluded from working. In addition, by using phrases such as "might do okay" and "likely will need," Dr. Peetoom hedged his statements regarding Plaintiff's abilities to sustain concentration and adapt to changes. Finally, Dr. Peetoom's other statements are consistent with a finding that Plaintiff can perform unskilled work. Dr. Peetoom stated that (i) Plaintiff's "judgment appears to be intact"; (ii) Plaintiff "should be okay with information that is not complex"; and (iii) Plaintiff is "likely to function better in situations in which social interaction is not consistently emphasized." (A.R. 564).

Further, substantial evidence supports the ALJ's RFC assessment. For example:

1. Dr. Mary Downs found that Plaintiff does not have any "significant functional limitations that would preclude participation in competitive [substantial gainful activity]." (A.R. 661).

---

[8] Any argument that the case should be remanded for a determination of Dr. Peetoom's intended meaning of "more than average" has been waived. *Meanel v. Apfel*, 172 F.3d 1111, 1115(9th Cir. 1999) (at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal); *Bray v. Commissioner of Social Security Admin*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (deeming argument not made in disability claimant's Opening Brief waived). The ALJ, rather than the Court, was in the optimal position to resolve any ambiguities in statements made in Dr. Peetoom's report. *See Meanel*, 172 F.3d at 1115. The Court does not find that manifest injustice would occur in deeming the argument waived. *Id*. (failure to comply with waiver rule is only excused when necessary to avoid manifest injustice).

2. Dr. K. Shah, who examined Plaintiff with respect to Plaintiff's allegations of recurrent epistaxis and dizziness and hearing loss, reported that the alleged impairments are non-severe. (A.R. 531).

3. Dr. H. Blumenfeld stated that there was "no indication of liver related complications" and that claimant's allegations are "not supported by the evidence." (A.R. 533).

4. Dr. J. Morelos concluded that the evidence does not show a documented diagnosis of arthritis and that Plaintiff's musculoskeletal examination was "entirely normal." (A.R. 534).

5. Dr. Hadi concludes in his Case Analysis that Plaintiff has minimal or less than substantial limitations in the areas of (i) understanding and memory; (ii) sustained concentration and persistence; (iii) social interaction; and (iv) adaptation. (A.R. 583).

6. Dr. Thomas Disney concluded that the "objective evidence does not support [the] severity of [Plaintiff's] allegations." (A.R. 712). Dr. Disney assessed that Plaintiff could occasionally lift 20 pounds, frequently lift ten pounds, stand or walk for at least two hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and had no limitations with respect to pushing and pulling. (A.R. 708).

7. Exams of Plaintiff by Dr. Steven Kanner were generally reported as "unremarkable." (A.R. 426, 428, 431, 432, and 435).

8. In addition, neither party disputes the rejection of Plaintiff's testimony regarding her subjective symptoms.[9] While not necessarily dispositive, it is noteworthy that on September 27, 2007 (only 20 days before Plaintiff's alleged disability onset date), Plaintiff stated to her employer's human resources department "I have refused to go on disability because I can work and be a contribution to CIGNA." (A.R. 746).

Finally, the ALJ's interpretation of Dr. Peetoom's opinion is consistent with the VE's testimony. The VE testified that work would not be precluded if Plaintiff's ability

---

[9] All challenges to an ALJ's decision must be raised in an appellant's opening brief. Otherwise, the argument is waived. *Bray*, 554 F.3d at 1226 n.7.

to sustain concentration or adapt to changes in work routine affected only 10 to 15 percent of the day. Given the other evidence in the record, it is rational to interpret the phrases "sustained concentration" or "more than average" as fitting within the "10 to 15 percent of the day" quantification. Where evidence exists to support more than one rational interpretation, a reviewing court must defer to the decision of the ALJ. *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (where "the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the [ALJ].") (citation and internal quotation marks omitted). Accordingly, the Court finds that the ALJ did not improperly ignore or reject Dr. Peetoom's opinion.

### ii.   Dr. Hadi's Opinion

Plaintiff argues that the ALJ also ignored and rejected Dr. Hadi's opinion. Dr. Hadi is a state agency psychiatrist. The ALJ thus incorporated Dr. Hadi's opinion into her decision where she stated that the RFC "conclusions reached by the physicians employed by the State Disability Determination Services supported a finding of 'not disabled.'" (A.R. 1039). The ALJ's decision also specifically refers to the exhibits containing the state agency doctors' reports, including Dr. Hadi's report. (A.R. 579-83 (referenced as Exhibits 21F and 22F in the ALJ's decision). The ALJ therefore did not ignore Dr. Hadi's opinion.

Plaintiff asserts that Dr. Hadi assessed that Plaintiff has moderate limitations in Plaintiff's abilities to "respond appropriately to changes in the work setting" and "set realistic goals or make plans independently of others." (Pl. Br. at 6). Plaintiff argues that the ALJ improperly rejected that assessment.

First, Dr. Hadi's statements quoted by Plaintiff are not Dr. Hadi's actual functional limitation assessments. Rather, the statements were from a check-box summary that was to *aid* Dr. Hadi in determining Plaintiff's functional limitations.

Dr. Hadi used Social Security's standardized Mental Residual Functional Capacity Assessment ("MRFCA") form. The Social Security Program Operations Manual System

("POMS") specifically states that Section I of the MRFCA "**is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." POMS DI 24510.060(B)(4)(a)[10] (emphasis in original). The ALJ is to use Section III of the MRFCA form in determining a claimant's RFC. *Id.* It is in Section III "that the **actual mental RFC assessment is recorded,** explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.*

The statements quoted by Plaintiff are from Section I of Dr. Hadi's completed MRFCA. The beginning of Section I states that the "Detailed explanation of the degree of limitation for each category (A through D), as well as any other assessment information you deem appropriate, is to be recorded in Section III (Functional Capacity Assessment)." (A.R. 579) (emphasis added). Dr. Hadi left Section III blank. Dr. Hadi, however, did provide a narrative "Case Analysis," in which he concluded that Plaintiff's limitations regarding adaptation, sustained concentration, and persistence were "less than substantial." If the Case Analysis is to be considered Dr. Hadi's RFC assessment, the ALJ's decision does not contradict it. In fact, Dr. Downs explicitly affirmed Dr. Hadi's determination in her report that assessed that Plaintiff can work.[11] (A.R. 661).

---

[10] Available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060.

[11] Regardless, the "less than substantial" statement was not presented by Plaintiff's attorney to the VE at the December 11, 2012 hearing. Nor does Plaintiff address it in her Opening Brief (Doc. 24). Any argument relating to the ambiguity of the statement is therefore waived. *Meanel v. Apfel*, 172 F.3d 1111, 1115(9th Cir. 1999) (at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal); *Bray*, 554 F.3d at 1226 n.7 (deeming argument not made in disability claimant's Opening Brief waived). The ALJ, rather than the Court, was in the optimal position to resolve any ambiguities in statements made in Dr. Hadi's RFC assessment. *See Meanel*, 172 F.3d at 1115. The Court does not find that manifest injustice would occur in deeming the argument waived. *Id.* (failure to comply with waiver rule is only excused when necessary to avoid manifest injustice).

Moreover, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (the ALJ may permissibly reject "check-off reports that [do] not contain any explanation of the bases of their conclusions."); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Even if the "moderate limitations" cited by Plaintiff are to be construed as Dr. Hadi's actual RFC assessment, the ALJ did not need to accept the assessment as it was in the form of a conclusory check-off report. The ALJ's failure to discuss the assessment would not constitute reversible error as it is not significant or probative. Alternatively, the failure would constitute harmless error. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006) (recognizing application of harmless error in Social Security context where a "mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.").

The ALJ did not improperly reject Dr. Hadi's opinion. The ALJ properly weighed the evidence in the record and rendered a decision that is supported by substantial evidence.

**2. Plaintiff's Challenge to the ALJ's Analysis at Step Five: The ALJ Did Not Err in Determining that Plaintiff Can Work as an Assembly Worker or Quality Control Inspector**

Social Security has taken administrative notice of the *Dictionary of Occupational Titles* (the "DOT"), which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs. 20 C.F.R. § 404.1560(b)(2); *see also Bray*, at 1230 n.3. The DOT can be utilized by an ALJ in determining whether a claimant, given his or her RFC, can perform his or her past relevant work. *Id*. The DOT indicates the specific vocational preparation ("SVP") for each job title.

SVP is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. (DICTIONARY OF OCCUPATIONAL TITLES,

Appendix C II (4th ed. 1991), http://www.occupationalinfo.org/appendxc_1.html#II). An SVP can range between one and nine, with one being the lowest amount of training (i.e., short demonstration) and nine being the highest (over ten years of education or training). *Id.* Unskilled work, which the ALJ assessed Plaintiff can perform, includes jobs with a rating of SVP 1 and SVP 2. 20 C.F.R. §§ 404.1568(a); 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.... [W]e consider jobs unskilled if ... a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed."); *see also Terry v. Sullivan,* 903 F.2d 1273, 1276-77 (9th Cir.1990).

In establishing that a claimant can perform other work, an ALJ may rely on a VE's testimony. The ALJ, however, must inquire on the record whether the VE's testimony conflicts with the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either . . . evidence automatically 'trumps' when there is a conflict." *Id.* at 1153. If a conflict exists between the DOT and the VE's testimony, the ALJ "must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Massachi*, 486 F.3d at 1153 & n.17 (citing SSR 00-4p).

An ALJ may rely on a VE's testimony that identifies general occupational categories rather than specific jobs within that category. For instance, in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1172 (9th Cir. 2008), the ALJ concluded that the claimant could perform work as a "'small product assembler,' with 1,000 jobs available regionally and 100,000 available nationwide, and as a 'packager/sorter,' with 800 jobs available regionally and over 80,000 available nationwide." The claimant argued that the ALJ did not identify specific jobs that the claimant could perform. *Id*. at 1175. The Ninth Circuit Court of Appeals found this argument unpersuasive, stating that the description was sufficiently specific to identify jobs that match the claimant's abilities.

1  *Id*. at 1176.  The Court then pointed out several assembly and sorting occupations in the
2  DOT that correspond to the claimant's limitations.  *Id*.

3         In *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995),  an ALJ found that a
4  claimant could perform sedentary work.  The ALJ adopted a VE's testimony that the
5  claimant could perform work as a grader/sorter, sedentary assembly worker, production
6  inspector, and food preparation worker.  *Id*.  The claimant argued that this constituted
7  error because several of these jobs, as defined by the DOT, require a "strength of more
8  than sedentary work."  *Id*.  The Court found that the "fact that some jobs listed by the
9  vocational expert as sedentary are also listed as 'light' work in the DOT is irrelevant."
10 *Id*.

11        Here, unlike in *Massachi,* the ALJ confirmed on the record that the VE's
12 testimony was consistent with the DOT. (A.R. 49).  Plaintiff argues that she cannot work
13 the identified jobs because the jobs are allegedly skilled.  To support her argument,
14 Plaintiff cites the position "Scale Assembly Set-Up Worker" (DOT 710.360-010), which
15 is rated SVP 7.  Plaintiff also cites the position "Quality-Control Inspector" (DOT
16 194.387-010), which is rated SVP 4.  In citing only these two jobs, Plaintiff
17 mischaracterizes the VE's testimony.  The ALJ's decision explains that the VE cited
18 <u>representative occupations</u> of assembly worker and quality control inspector.  Under
19 *Stubbs-Danielson* and *Moncada*, this description is sufficiently specific to identify jobs
20 that match Plaintiff's RFC.

21        The DOT contains a number of sedentary assembler jobs that have a SVP 2 rating.
22 These include (i) final assembler (optical goods) (DOT § 713.687-018); (ii) compact
23 assembler (jewelry-silver) (DOT § 739.687-066); (iii) lamp-shade assembler (DOT §
24 739.684-094); (iv) eye-dropper assembler (DOT § 739.687-086); (v) slide-fastener-chain
25 assembler (DOT § 734.687-074); (vi) assembler (button & notion) (DOT § 734.687-018);
26 and (vii) crystal attacher (clock & watch) (DOT § 715.687-018).  These positions are
27 "assembly worker" jobs even though the job titles state "assembler" or "attacher."  *See*
28 *Stubbs-Danielson*, 539 F.3d at 1176 (finding that several "assembly" jobs in the DOT

correspond to the claimant's limitations, and citing specifically to the position "final assembler (optical goods)" (DOT § 713.687-018) and "assembler (button & notion)" (DOT § 734.687-018)).

The DOT also contains sedentary quality control inspector jobs that have a SVP 2 rating. These include: (i) film touch-up inspector (DOT § 726.684-050); and (ii) dowel inspector (woodworking) (DOT § 669.687-014). Although the titles of these positions omit the phrase "quality control," the positions are listed in the general job category "Production Inspectors, Testers, Graders, Sorters, Samplers, Weighers." *Occupational Information Network*, available at http://www.occupationalinfo.org/onet/83005a.html. Primary tasks for jobs within this category involve examining and inspecting products for defects. *Id*. Several of the positions within the "Production Inspectors" category are specifically labeled "quality control inspector," and their job descriptions mirror the job descriptions of positions that are merely labeled "inspector."

For example, the job description for "quality control inspector (sugar and conf.)" states "Inspects bagging, storage, and shipping facilities for conformance to company sanitation and safety standards in beet sugar refinery. . . ." (DOT § 529.367-034). This is similar to the job description for "dowel inspector (woodworking)," which states "Inspects dowel pins for flaws, such as square ends, knots, or splits, and discards defective dowels." (DOT § 669.687-014). Likewise, the job description for "film touch-up inspector" states "Inspects and repairs circuitry image on photoresist film (separate film or film laminated to fiberglass boards) used in manufacture of printed circuit boards (PCB's)." The Court finds that DOT positions exist which are consistent with the VE's testimony that Plaintiff can work as a quality control inspector.

The Court therefore finds that the ALJ's decision at step five is supported by substantial evidence and the ALJ's reliance on the VE's testimony does not constitute reversible error.

### III.  CONCLUSION

Based on the foregoing, the Court concludes that the ALJ's decision is supported by substantial evidence and is free from reversible error.  Accordingly, the decision of the Commissioner of Social Security is affirmed.

**IT IS THEREFORE ORDERED** affirming the decision of the Commissioner of Social Security.  The Clerk of Court shall enter judgment accordingly.

Dated this 13th day of February, 2015.

Eileen S. Willett
United States Magistrate Judge